UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ROLAND PIERCE                                              PLAINTIFF

VS.                                   CIVIL ACTION NO. 3:11CV790TSL-MTP

UNITED HOME LIFE INSURANCE COMPANY                         DEFENDANT

### MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant United Home Life Insurance Company (United) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Roland Pierce has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Roland Pierce alleges in this case that he is the beneficiary of a $75,000 life insurance policy issued by United to his father, Rickey Pierce, on June 15, 2011, just six days prior to Rickey Pierce's unexpected death. He avers that United wrongfully and in bad faith denied his claim for benefits under the policy, and he has brought this action seeking to recover policy benefits, together with punitive damages and attorney's fees. In its motion for summary judgment, United contends that based on the undisputed facts of record, as a matter of law, it properly denied plaintiff's claim for benefits for any one or more of the

following three reasons: (1) there was never a binding insurance policy because Rickey Pierce, the applicant for coverage, failed to accept United's counteroffer for coverage in the manner required by the insurer; (2) Rickey Pierce failed to sign and return the policy receipt, which was a condition precedent necessary to effectuate coverage under the policy; and (3) Rickey Pierce made material misrepresentations to United in the insurance application.

The following facts are undisputed. On May 26, 2011, Rickey Pierce (Mr. Pierce) signed an application for term life insurance benefits that named Roland Pierce the beneficiary. In the application, Mr. Pierce requested $100,000 in coverage with a monthly premium of $57.85 under an Express Issue Term Deluxe 20 policy. This application was first sent to United by United agent Shawn Harness on May 31, 2011. On June 2, 2011, a United representative, Cathy Thompson, advised Harness via email that the application could not be submitted to underwriting because the maximum face amount for the type of policy requested was $50,000. Although Thompson suggested a different product, the following day, Harness faxed to United an application for the very same coverage and policy originally requested. On June 6, 2011, United informed Harness via email that the application would be submitted to underwriting for $50,000 in coverage, rather than the $100,000 requested, since that was the maximum face amount of the type of

2

policy requested in the application. Later the same day, Harness telephoned United and advised that Mr. Pierce desired an Express Issue Term Plus policy with $75,000 in coverage for a monthly premium of $65.66. Two days later, on June 8, United requested that Harness resubmit the first page of the application to reflect the desired coverage and policy, and upon receiving no response, United again contacted Harness on June 10 asking that he resubmit page one of the application. Harness faxed an application on June 10, 2011 requesting $100,000 of coverage under two kinds of policies, Express Term Plus and Premier 20 policy, for a monthly premium of $57.85.

On June 17, 2011, United's underwriting department approved issuance of a policy, and on June 21, 2011, United mailed to Mr. Pierce an Express Issue Term Plus policy providing $75,000 coverage for a monthly premium of $65.66. United included with the policy an application amendment (since the policy did not conform to the type and amount of coverage reflected in Mr. Pierce's existing application), which Mr. Pierce was requested to sign and return. The amendment recited, "This amendment is a part of the policy whose number appears below and must be properly dated, signed and witnessed before the policy becomes effective." United also included a policy receipt, which required that Mr. Pierce certify that his health condition as stated in the application remained unchanged the day he received the policy.

According to United, Mr. Pierce was also required to sign and return the receipt before coverage under the policy would become effective. However, Mr. Pierce never signed or returned the application amendment or the policy receipt as he unexpectedly died on the same day the policy, amendment and policy receipt were mailed to him by United.

United contends that no valid contract for insurance was ever formed, but further asserts that even if a valid contract was formed, the policy was void *ab initio* based on material misrepresentations made by Mr. Pierce in the application.[1] Specifically, at the time of the application on May 26, 2011, Mr. Pierce represented that he was 5'9" tall and weighed 205 pounds, and also represented that he did not consume any tobacco products in the previous twelve months. In fact, however, Mr. Pierce was actually 5'6" tall and weighed 261 pounds on May 26, 2011, and he regularly used tobacco products during the prior twelve months.

Mississippi law holds that

> if an applicant for insurance is found to have made a misstatement of material fact in the application, the insurer that issued a policy based on the false application is entitled to void or rescind the policy. To establish that, as a matter of law, a material misrepresentation has been made in an insurance

---

[1] The court need not consider whether a contract was formed – though it seems reasonably clear none was – since it is apparent that in view of Mr. Pierce's misrepresentations in the policy application, United is entitled to rescind any contract which might have been created.

4

> application, (1) it must contain answers that are false, incomplete, or misleading, and (2) the false, incomplete, or misleading answers must be material to the risk insured against or contemplated by the policy. The party seeking to void the insurance contract ... must establish the existence of a factual misrepresentation and its materiality *by clear and convincing evidence*. Whether the misrepresentation was intentional, negligent, or the result of mistake or oversight is of no consequence.

Carroll v. Metropolitan Ins. and Annuity Co., 166 F.3d 802, 805 (5th Cir. 1999) (citations omitted). "A misrepresentation ... is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk." Id. at 806.

It is undisputed that the answers in the insurance application regarding Mr. Pierce's height, weight and tobacco use are false, and United has presented uncontroverted evidence that Mr. Pierce's representations in the application as to these matters were material. Notwithstanding this, plaintiff contends United has waived its right to rescind the policy based on alleged misrepresentations because United did not assert any claim of misrepresentations when it denied payment under the policy. However, Mississippi law allows an insurer to rely at trial on additional defenses to coverage that were not originally given as a basis for the insurer's refusal to pay a claim. See Chapman v. Safeco Ins. Co. of America, 722 F. Supp. 285, 296 (N.D. Miss. 1989) (opining that under Mississippi law, "there is no

5

independent rule that an insurance company must rely at trial on the first reason for refusing to pay the claim given the insured absent a showing that it has somehow waived the subsequently raised defense or that circumstances are such that the company should be estopped from asserting that defense") (citing <u>Bankers Life Ins. Co. v. Crenshaw</u>, 483 So. 2d 254, 273 (Miss. 1985), and <u>Aetna Life & Casualty Co. v. Lavoie</u>, 470 So. 2d 1060 (Ala. 1985)). Plaintiff has not claimed, much less demonstrated, that the requirements of either waiver or estoppel are present.

Plaintiff argues, alternatively, that United cannot be heard to complain about representations as to weight or height given that its agent, Harness, met with Mr. Pierce to complete the application and actually completed the application for Mr. Pierce to sign. Plaintiff evidently takes the position that United cannot claim to have been misled since Harness was able to observe Mr. Pierce's height and weight for himself and thus would have known that Mr. Pierce's responses to the questions in the application regarding his height and weight were false. He further argues that United is estopped from claiming that Mr. Pierce made misrepresentations since on May 26, 2011, Mr. Pierce executed an authorization for release of medical information, thus giving United access to his entire medical history prior to its issuance of the subject policy. In the court's opinion, neither contention has merit.

As Judge Jordan recently observed in Evans v. Mendota Insurance Company,

> There exists a long "line of cases that removes the right to rescind where an insurance agent 'takes charge of the preparation of the application' and records the information inaccurately." [Massachusetts Mut. Life Ins. Co. v. Nicholson, 775 F. Supp. 954, 961 (N.D. Miss. 1991)] (collecting cases) (citations omitted). "These cases hold that if the agent suggests or advises what is to be answered, the company cannot void the policy because the answers were untrue 'if full disclosures were made by the applicant to him.'" Id. (quoting Miller, 484 So.2d at 334). "The application of this doctrine, however, is subject to the necessary qualification that the assured must have acted in good faith, and must have been free of fraudulent concealment or collusion with the agent of the company...." Fidelity & Cas. Co. of N.Y. v. Cross, 95 So. 631, 635 (Miss. 1923); accord Nicholson, 775 F. Supp. at 961.

Evans v. Mendota Ins. Co., Civ. Action No. 4:10-CV-27-DPJ-FKB, 2011 WL 765676, at 4 (S.D. Miss. Feb. 25, 2011). Thus, Mississippi cases have consistently held that where an agent completes the application, so long as the agent accurately records the proposed insured's responses to questions in the application, the insurer is entitled to rescind an insurance policy due to the applicant's material misrepresentations in the application. See, e.g., Evans, 2011 WL 765676 at 5 (granting summary judgment where there was no evidence that the insurance application contained "any material misstatements other than the ones provided by Evans herself"); Turner v. Northwestern Mut. Life Ins. Co., No. Civ. A. 1:94CV156-D-D, 1995 WL 1945466 (N.D. Miss. May 30, 1995) (summary judgment proper where insured failed to offer evidence that agent

inaccurately recorded false answer in insurance application regarding insured's driving history); Nicholson, 775 F. Supp. at 961 (rescission based on material misrepresentations in insurance application appropriate where insured offered no evidence that agent inaccurately recorded false information provided by the insured).[2]

Further, United is not estopped from asserting Mr. Pierce's misrepresentations as a basis for rescission of the policy merely because Mr. Pierce provided a medical authorization as part of the application process. In Nicholson, supra, the court rejected the insured's argument that his execution of a broad medical release precluded the insurer's reliance on misrepresentations in the application to void the policy since the authorization permitted an investigation that would have revealed that certain responses in the application were false. Addressing the argument, the court stated,

> This is not the law in Mississippi. As noted, the insurance company has the right to rely on the information contained in the application, [Mattox v. Western Fidelity Ins. Co., 694 F. Supp. 210 (N.D. Miss. 1988)], as long as the insurance company did not have "sufficient indications that would have put a prudent

---

[2] As defendant notes, there is no suggestion that Harness would have known of Mr. Pierce's tobacco use merely from meeting with him – and a misrepresentation as to tobacco use alone is enough to warrant rescission of the policy. Further, the notion that an agent should disregard an applicant's own affirmative responses to questions about his height and weight and instead rely on his own judgment about these matters imposes an unreasonable burden on the agent.

8

>    man on notice." [<u>New York Life Ins. Co. v. Strudel</u>, 243
>    F.2d 90, 93 (5th Cir. 1957)]. If facts in the
>    application would cause a prudent insurer "to start an
>    inquiry, which, if carried out with reasonable
>    thoroughness, would reveal the truth," the insurance
>    company "cannot blind [itself] to the true facts and
>    choose to 'rely' on the misrepresentation." <u>Id.</u> Counsel
>    for the defendant focuses on the latter portion of this
>    rule, but <u>Strudel</u> suggests that something in the
>    application must have put the insurer on notice in the
>    first place.

<u>Nicholson</u>, 775 F. Supp. at 960. Plaintiff has not suggested what information contained in the application would have put United on notice that it should investigate further regarding Mr. Pierce's height, weight or tobacco usage. Accordingly, United was entitled to rely on Mr. Pierce's representations as to his height and weight, and his negative response to the question in the application regarding tobacco usage, and it was not required to obtain his medical records solely to check the accuracy of his responses.[3]

In summary, assuming for the sake of argument that a valid contract of insurance was formed, the court is of the opinion that Mr. Pierce's material misrepresentations on the application allow United to rescind or void the policy. Therefore, it is ordered that United's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 26th day of November, 2012.

---

[3] The few cases cited by plaintiff are inapposite.

9

/s/Tom S. Lee
						UNITED STATES DISTRICT JUDGE